**SAFEWAY STORES, INC., a Delaware corporation, Appellant,**

v.

**Barbara Ann LUCAS, Appellee.**

**No. 159–68.**

United States Court of Appeals Tenth Circuit.

May 13, 1969.

Rehearing Denied June 5, 1969.

claims against him. None of them were parties to this case.

**604**

Thomas T. Crumpacker, of Wood, Ris & Hames, Denver, Colo., for appellant.

Allen P. Mitchem, Denver, Colo., for appellee.

Before PICKETT, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

This diversity suit was instituted in the District of Colorado by appellee, Lucas, against appellant, Safeway Stores, Inc., to recover damages for personal injuries received by a fall in one of Safeway's retail stores in the Denver area. The case was tried to a jury and Lucas prevailed. The appeal is from the judgment entered pursuant to the jury verdict and from the orders denying a new trial and denying a motion for judgment notwithstanding the verdict. The pertinent facts are actually without dispute and the appeal may be disposed of by determining the sufficiency of the evidence to support the jury verdict.

The Safeway store opened sometime between 8:30 and 9:00 a. m. on Sunday, August 14, 1966, with a skeleton force of employees. Several employees were in the store as early as 8:00 a. m. Appellee came into the store about 9:30 a. m. and proceeded to the dairy rack. There she slipped and fell and suffered the injuries complained of here. It is admitted that the presence of a portion of a broken egg on the floor caused her to slip and fall. She was assisted to her feet by one of the store employees and drove her car from the store to her home, a distance of about five blocks. Upon her arrival home, her husband noticed a fleck of dried brittle egg on the side of her skirt and he removed it and broke it into several pieces.

The evidence further shows that after the accident one of the store employees noticed a carton of eggs placed on top of the egg display at a different angle than the other egg cartons on the rack. This carton contained a broken egg shell whose contents apparently had dripped upon lower cartons and down to the floor. A store employee testified that the finding of broken eggs in and around the egg bin was a frequent occurrence and that sometimes there was egg on the floor in the area. He also stated that there was no regular inspection procedure followed in this department of the store.

The evidence in the record concerning the sweeping and cleaning of the floors in the store is of some importance. The floors had not been swept or cleaned during the morning and prior to the accident. It was customary on weekdays to have the floor swept several times a day and to mop the entire floor once a week. The floor had last been swept on the previous night sometime between 9:30 p. m. and midnight. One employee of the store was regularly charged with the

janitorial duties of sweeping the floors several times a day and of keeping the floors clean by removing trash and litter from the store. No one was on duty on the date of the accident to perform these routine janitorial duties.

The dairy department (milk and eggs) had last been stocked by an employee sometime the previous night between 9:30 p. m. and midnight. The traffic in the store at the time of the accident was light. Appellee testified that she saw no customers in the dairy case area of the store while she was there.

In this diversity suit we are bound by the law of Colorado. Vrooman v. Beech Aircraft Corp., 183 F.2d 479 (10th Cir. 1950). The Colorado Supreme Court has clearly stated the basis for liability in the so-called slip and fall cases. In substance the rule is that a shopkeeper is liable to a business invitee who slips and falls on the floor of the shop, if the shopkeeper knew or had reason to know of the presence of the condition causing the fall in time to prevent the accident or warn of the dangerous condition. Miller v. Crown Mart, Inc., 425 P.2d 690, 692 (Colo.1967); F. W. Woolworth Co. v. Peet, 132 Colo. 11, 284 P.2d 659, 661 (1955); Annot., 61 A.L.R.2d 6 (1958). In Miller it is also recognized that the length of time a dangerous condition must exist before constructive notice of the condition may be charged against the shopkeeper varies according to the circumstances of each case and that a "stop watch reading" alone cannot resolve the issue. The decision of the Court of Appeals of Maryland in Rawls v. Hochschild, Kohn & Co., Inc., 207 Md. 113, 113 A.2d 405, 62 A.L.R.2d 124 (1955), is quoted in the Miller case with approval. Therein the Maryland court said "The question requires a consideration of the nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances."

Appellant claims error by the trial judge in not sustaining the motion to dismiss at the close of the plaintiff's evidence. Applying the Colorado law as stated above, we must conclude that there was sufficient evidence to require the trial judge to submit the case to the jury, as he did.

In this connection, appellant stresses the significance of the lack of evidence to show the length of time that the broken egg had been on the floor. As stated in Miller v. Crown Mart, Inc., supra, there are other circumstances to be considered in applying the doctrine of constructive notice to appellant. We must consider the nature of the condition complained of, its probable consequences, the opportunities available for discovering it, the effort required to discover and rectify it, and the foresight which a person of reasonable prudence would exercise under similar circumstances. Simply stated, for us to find error in this case, we would have to conclude that no inference may reasonably be drawn from the evidence in the record that appellant could have discovered the egg on the floor through the exercise of reasonable care. Miller v. Crown Mart, Inc., 425 P.2d at 692.

Without dispute there was some broken egg on the floor of the store and it caused appellee to slip and fall. There is no direct evidence indicating how long the egg had been there or that any employee of appellant had knowledge prior to the accident of the egg being on the floor. The egg rack had been restocked sometime between 9:30 p. m. and midnight of the previous day. There was no regular routine of floor sweeping or cleaning on the day of the accident. The breaking of the eggs in the egg bin area occurred frequently and the store provided no routine regular inspection of the area on the day of the accident. The store was operated in a self-service manner and on the morning of the accident traffic in the store had been light. After the accident the appellee had a fleck of dry yellow egg on her skirt.

While it is indeed a very close question, we are persuaded that from all of the evidence, the jury was free to infer that the egg had been on the floor a sufficient length of time for appellant, through the exercise of reasonable care, to discover and correct the unsafe condition of the floor.

Appellant also attacks the sufficiency of the instruction given to the jury by the trial judge on the issue of constructive notice of the dangerous condition of the floor. We have adequately discussed the law of Colorado on this issue as reflected by Miller v. Crown Mart, Inc., supra. Appellant's tendered instruction on this point does not conform to the Colorado law because it would restrict the jury to a consideration only of what the Miller case calls "stop watch reading." The instruction given by the trial judge embraces generally the circumstances which should be considered by the jury as pointed out by the Miller case.

Affirmed.